```
            UNITED STATES DISTRICT COURT
                     FOR THE
                DISTRICT OF VERMONT
```

Jason Wimble,                   :
      Plaintiff,                :
                                :
   v.                           :      File No. 1:04-CV-60
                                :
Steven Gold, Kathleen           :
Lanman,                         :
      Defendants.               :

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
                (Papers 19 and 24)

Plaintiff Jason Wimble, a Vermont inmate proceeding *pro se*, brings this action claiming that he has been discriminated against based upon his mental illness. Specifically, Wimble claims that he has been denied the alternative case plan to which he is allegedly entitled as a mentally ill person. (Paper 4). Wimble brings his claim pursuant to the Americans with Disabilities Act ("ADA").

The defendants have moved for summary judgment, arguing that Wimble has now received the case plan he requested. The summary judgment motion was filed on October 3, 2005, and is unopposed. The defendants have also moved to dismiss on the ground that Wimble has failed to comply with an order compelling him to respond to discovery. For the reasons set forth below, I

recommend that the motion for summary judgment be GRANTED, that the motion to dismiss be DENIED as moot, and that this case be DISMISSED.

## Factual Background

Wimble's complaint alleges that he has been diagnosed with schizophrenia. On January 6, 2004 Wimble filed a prison grievance form stating that his mental illness prevented him from participating in the Cognitive Self-Change ("CSC") program, and requesting an alternate case plan. (Paper 9 at 22). On February 22, 2004, the Department of Corrections ("DOC") ruled in his favor and recommended that "[t]his case be staffed at the Central Office level for the development of an alternative case plan." Id. at 23.

Wimble filed his complaint in this case on March 18, 2004, presumably because no action had been taken with respect to developing his new case plan. (Paper 4). The complaint claimed that the defendants were discriminating against him by forcing him to take part in CSC, and that the treatment he was receiving was inhumane. The complaint sought immediate release from prison and $1 billion in damages.

On May 20, 2004, the DOC conducted a case staffing at the Central Office level to develop an alternative case plan for Wimble. According to an affidavit submitted by DOC Living Unit Supervisor Sue Ransom-Kelly, the new plan required that Wimble be transferred to Northwest State Correctional Facility ("NWSCF") "where he could work to obtain housing in the community so that he could be released on conditional reintegration furlough (CR). After he is released and stabilized in the community, his caseworker would assess him to determine if he could participate in" CSC. (Paper 19 at 13).[1] Wimble was transferred to NWSCF on May 27, 2004, and referred to the Co-Occurring Disorder Treatment Program ("CODTP"). It was subsequently determined, however, that Wimble could not participate in the CODTP because of his history of violence.

On February 16, 2005, the DOC conducted another case staffing at the Central Office level. After Dr. Paul Cotton indicated that Wimble was now able to participate in CSC, Wimble's new case plan required that he either participate in CSC, or that he maintain employment and

---

[1] Ransom-Kelly's initial affidavit was unsigned. Her signed affidavit was submitted as Paper 23.

not commit any violations of the facility disciplinary rules.  Wimble opted not to participate in CSC, but was subsequently convicted of violating disciplinary rules.  Consequently, the DOC conducted another case staffing.

On May 26, 2005, the DOC approved an alternative case plan consisting of three phases, none of which required Wimble to participate in CSC.  Ransom-Kelly reports that "Mr. Wimble has progressed to Phase II and is currently seeking an appropriate residence in order that he may be released into the community on CR."  Id. at 14.

## Discussion

### I.  Summary Judgment Standard

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994).  "[T]he trial court's task at

the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224.

Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the admissible evidence would be insufficient to carry the non-movant's burden of proof at trial.  Celotex, 477 U.S. at 322-23.  If the moving party meets its initial burden of showing a lack of a material issue of fact, the burden shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The non-moving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993); see also Scotto v. Almenas, 143 F.3d 105, 114-15 (2d Cir. 1998).  In determining whether summary judgment

is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

II.  Wimble's ADA Claim

Wimble alleges that the defendants have discriminated against him based upon a disability. Specifically, Wimble claims that the defendants failed to establish a case plan that would accommodate his schizophrenia, and that he is entitled to a new case plan.  The defendants argue that Wimble has failed to show either that he was denied an adequate case plan or that the denial was motivated by "either discriminatory animus or ill will due to his disability."  (Paper 19 at 5, citing Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn, 280 F.3d 98, 112 (2d Cir. 2001)).

Title II of the ADA requires government entities to modify their policies and practices so that reasonable accommodations are provided to qualified individuals.  42 U.S.C. § 12131.  A qualified individual is a person with a disability who, with reasonable modifications, meets

6

the eligibility requirements for the receipt of services or the participation in programs or activities provided by the government entity.  Id. at § 12131(2).  Title II states that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefit of services, programs or activities of a public entity.  42 U.S.C. § 12132.  The defendants do not contest Wimble's claim that he is a qualified person with a disability under the ADA.

In order for Wimble to succeed in this case, he must show (1) that he has a disability for purposes of the ADA, (2) that he is otherwise qualified for the benefit he has been denied, and (3) that the defendants denied him the benefit based upon his disability.  Wexler v. Bd. of Educ., 287 F.3d 138, 146-47 (2d Cir. 2002).  In Garcia, the Second Circuit further held that a private suit brought pursuant to Title II of the ADA for money damages can only be maintained if the plaintiff can establish that the violation was motivated by either discriminatory animus or ill will due to disability.  280 F.3d at 111-12; see also Henrietta D. v. Bloomberg, 331 F.3d 261, 288 (2d Cir. 2003).

Here, the undisputed facts show that the DOC has worked to address Wimble's concern about participation in CSC.  Shortly after he filed his grievance, the DOC agreed that a new case plan needed to be developed. Although approximately 90 days passed between the ruling on Wimble's grievance and the development of a new plan, the new plan did not have a CSC component.  Even after Dr. Cotton stated that Wimble was able to participate in CSC, the DOC developed a plan that encouraged CSC, but provided for an alternative.  When Wimble failed to successfully complete the alternative program, another case staffing was conducted and a multi-phase plan was developed.  None of the phases required CSC participation.

Wimble's claim is that he was denied an adequate case plan due to his disability.  The record at summary judgment shows that the DOC has been responsive to Wimble's concerns, and has made consistent efforts to develop case plans that address those concerns.  Based upon this record, the Court should not find that Wimble was either denied a benefit, or that the alleged denial was based upon his disability.

Furthermore, there is nothing in the record indicating that the defendants have acted with discriminatory animus or ill will.  Indeed, the evidence shows that the defendants have been sensitive to Wimble's concerns and have worked to accommodate his alleged needs with respect to his case plan.  Without a showing of discriminatory animus or ill will, Wimble cannot recover money damages.  See Garcia, 280 F.3d at 111-12; see also Harris v. New York State Dep't of Health, 202 F. Supp.2d 143, 174-75 (S.D.N.Y. 2002) (dismissing a Title II ADA claim for failure to plead discriminatory animus or ill will)).  In sum, Wimble has failed to carry his burden of showing that there are genuine issues of material fact to be tried.  Because the undisputed facts show that Wimble cannot satisfy the elements of an ADA claim for either injunctive relief of monetary damages, I recommend that the defendants' motion for summary judgment be GRANTED and that this case be DISMISSED.

## Conclusion

For the reasons set forth above, I recommend that the defendants' motion for summary judgment (Paper 19) be GRANTED, and that this case be DISMISSED.  I further

recommend that the defendants' motion to dismiss (Paper 24) alleging discovery violations be DENIED as moot.

Dated at Burlington, in the District of Vermont, this 3rd day of February, 2006.

/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).